**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

PROVIDENT LIFE & ACCIDENT     :
INSURANCE COMPANY               :
                                      :
     v.                           :          CIVIL NO. CCB-09-1679
                                        :
MEGHAN F. SULLIVAN and       :
THE BOWMAN RESTAURANT,    :
INCORPORATED                 :
                                      :

...o0o...

## MEMORANDUM

Now pending in this interpleader action are cross-motions for summary judgment filed by The Bowman Restaurant, Inc. ("BRI") and Meghan F. Sullivan. Because the factual record shows that Ms. Sullivan's father, William Sullivan, was without authority to transfer ownership and change the beneficiary of the disputed life insurance policy, BRI's motion will be granted and Ms. Sullivan's motion will be denied.

The insurance policy (the "Policy") in dispute in this case was issued in 1985 by Provident Life and Accident Insurance Co. ("Provident Life") as a "keyman" policy on the life of Mr. Sullivan. (Compl. Ex. 1.) The Policy was owned by BRI, a Maryland corporation, which also was listed as the beneficiary. (*Id.*) The benefit of the policy was $140,000 (*id.*), and all premiums were paid by BRI.[1] (Diffenderffer Aff. at ¶¶ 15, 27, attached to BRI Summ. J. Mem. as Ex. A; *see also* BRI Opp'n Mem. Ex. A.)

In July 2003 Stephen Diffenderffer purchased 45% of BRI's stock. (Diffenderffer Aff. at ¶ 5.) Pursuant to a Stockholder's Agreement, Mr. Diffenderffer became President and Treasurer

---

[1] Ms. Sullivan argues that her father paid for the Policy from its inception. (*See* Sullivan Summ. J. Mem. at 3.) She has not submitted any evidence, however, to support this assertion. The only evidence before the court shows that BRI paid the Policy premiums until Mr. Sullivan's death in 2008.

of BRI, while Mr. Sullivan, who owned 50% of the shares, was designated Vice President and Secretary. (*See* BRI Stockholder's Agreement, attached to BRI Summ. J. Mem. as Ex. E.)

On January 19, 2005, Mr. Sullivan submitted to Provident Life a Policy Owner Service Request form changing ownership to himself, which, according to Provident Life, he signed as President (Compl. at ¶ 12) and, according to Ms. Sullivan, he signed as treasurer and secretary. (*See* Sullivan Answer at ¶ 12.) On January 27, 2005, he submitted another request form changing the beneficiary to Meghan Sullivan. Mr. Diffenderffer was not advised of these changes, and BRI continued to pay the premiums until Mr. Sullivan's death in November 2008. (Diffenderffer Aff. at ¶¶ 15, 22, 24.) Ms. Sullivan then claimed the proceeds of the $140,000 policy.

Ms. Sullivan has not produced any evidence disputing the facts put forward by BRI, but rather relies on a "contract" having been formed between Mr. Sullivan and Provident Life. Mr. Sullivan's actions in 2005, however, were beyond the scope of his authority as BRI's Vice President and Secretary. *See* MD. CODE, CORPS. & ASS'NS § 2-414 ("an officer or agent of the corporation has the authority and shall perform the duties in the management of the assets and affairs of the corporation as . . . provided in the bylaws"); *Cloverfields Improvement Assoc. v. Seabreeze Props., Inc.*, 362 A.2d 675, 683 (Md. App. 1976) (explaining that "[o]rdinarily the duties of corporate officers are spelled out in the by-laws", and "[g]enerally, a corporate secretary is not authorized to act in an executive capacity so as to bind the corporation to contracts"). The BRI bylaws provide that the President "may execute, in the name of the Corporation, all authorized deeds, mortgages, bonds, contracts, or other instruments, except in cases in which the signing and execution thereof shall have been expressly delegated to some other officer or agent of the Corporation." (BRI Bylaws at § 3.02, attached to BRI Summ. J.

Mem. as Ex. G.)  But the Vice President and Secretary are given no such authority.  (*See id*. at §§ 3.03, 3.04.)  Moreover, Mr. Sullivan's actions probably breached his fiduciary duty to the corporation.  *See, e.g., Leavy v. Am. Fed. Sav. Bank*, 764 A.2d 366, 372 (Md. App. 2000) (noting that an unauthorized use of corporate property violates the fiduciary duty of loyalty) (citing *Levin v. Levin*, 405 A.2d 770 (Md. App. 1979)).  Further, he gave no consideration for this transfer of ownership, as BRI continued to pay the premiums.  Unfortunately for Ms. Sullivan, she has shown no reason why she should receive the benefit of her father's unauthorized actions.

A separate Order follows.


| June 24, 2010 | /s/ |
| --- | --- |
| Date | Catherine C. Blake |
| | United States District Judge |